UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/6/18
```

ERIN DALY,

                          Plaintiff,

    -v-

CITIGROUP INC. *et al.*,

                          Defendants.

No. 16-cv-9183 (RJS)
<u>OPINION AND ORDER</u>

<u>RICHARD J. SULLIVAN</u>, District Judge:

Plaintiff Erin Daly brings this action against her former employers, Defendants Citigroup Inc., Citigroup Global Markets, Inc., and Citibank, N.A. ("Defendants" or "Citi"), alleging that Defendants discriminated against her on the basis of her gender and retaliated against her after she complained about that discrimination and unrelated securities-law violations perpetrated by Defendants. Now before the Court are Defendants' motions to (1) compel arbitration and (2) dismiss Plaintiff's Sarbanes-Oxley whistleblower claim for lack of jurisdiction and/or failure to state a claim pursuant to Federal Rule of Civil Procedure 12. (Doc. No. 20.) For the reasons set forth below, the Court grants Defendants' motions in their entirety.

I. BACKGROUND[1]

A. Facts

Plaintiff was employed by Defendants from 2007 to 2014 (Doc. No. 27 ("FAC") ¶¶ 53, 133), eventually rising to the position of Assistant Vice President in the "Citi Private Bank"

---

[1] The following facts are drawn from Plaintiff's first amended complaint (Doc. No. 27 ("FAC")) and her employment agreement (Doc. No. 22). On March 24, 2017, Plaintiff filed a letter motion seeking leave to file an amended complaint and the amended complaint itself. (Doc. Nos. 24, 25.) At the time, the Court deferred consideration of Plaintiff's request to amend her complaint until the resolution of Defendants motion to dismiss. (Doc. No. 28.) However, because Plaintiff's amended complaint was filed exactly twenty-one days after Defendants made their motion to dismiss and to compel arbitration, Plaintiff was entitled to amend her pleadings as of right pursuant to

division (*id.* ¶ 57).  While she was employed by Defendants, Plaintiff entered into three successive arbitration agreements with Defendants in which she agreed to the mandatory arbitration of employment-related disputes.  (*See* Doc. No. 22, Exs. 1–6.)  In 2009, employees in Plaintiff's division (the "Desk") were given authority to allocate stock among the Bank's clients.  (*Id.* ¶¶ 70–71.)  The ability to exercise allocation discretion was particularly desirable – and made Desk employees valuable to clients – when a major "hot" initial public offering took place.  (*Id.* ¶¶ 70–72.)  In those situations, the demand for stock subscriptions often outpaced supply and the allocation power could be used to reward some clients over others.  (*Id.*)  On June 29, 2012, Plaintiff was allegedly, and inexplicably, stripped of her ability to allocate stock.  (*Id.* ¶ 73.)  Despite Plaintiff's complaints to her supervisors and her efforts to regain her stock-allocation clearance, Plaintiff's ability to allocate stock was never restored.  (*Id.* ¶¶ 75–88.)  At around the same time, Plaintiff started to be excluded from regular meetings and her opinions and role on the Desk were increasingly devalued.  (*Id.* ¶¶ 90–92.)  Plaintiff claims that these employment decisions communicated to others that "the boys were in charge."  (*Id.* ¶ 93 (emphasis omitted).)  Plaintiff further alleges that Citi employee James Messina, who served as Plaintiff's supervisor, repeatedly demanded that Plaintiff disclose material, nonpublic information that she obtained as a result of her role as the "go-to person" for legally sensitive trading plans and stocks that were subject to U.S. Securities and Exchange Commission ("SEC") rules governing insider trading and restricted stock.  (*Id.* ¶¶ 102–22.)  On November 19, 2014, Plaintiff alerted Citi attorneys and human resources employees of Messina's behavior, and on December 1, 2014, Plaintiff was terminated.

---

Federal Rule of Civil Procedure 15(a)(1)(B).  Accordingly, the amended complaint is the operative pleading in this action and will be considered by the Court in connection with Defendants' motions.  Nevertheless, because the amended complaint has no effect on the arguments raised by Defendants, the Court will deem Defendants' motions to apply to the amended complaint.  In addition, the Court has also relied on Defendants' memorandum of law (Doc. No. 20), Plaintiff's opposition (Doc. No. 23), Defendants' reply (Doc. No. 29), Defendants' supplemental letter motion (Doc. No. 34), Plaintiff's supplemental letter response (Doc. No. 37) and the exhibits and declarations attached thereto.

(*Id.* ¶¶ 124, 133.)  After Plaintiff was terminated, Defendants filed a Financial Industry Regulatory Authority ("FINRA") U5 Form that included allegedly false and negative descriptions of her performance as an employee.[2]  (*Id.* ¶ 38.)

## B.  Procedural History

Plaintiff filed her initial complaint on November 28, 2016, bringing claims for (1) unlawful gender discrimination and (2) subsequent retaliation in violation of federal, state, and local antidiscrimination statutes[3] and of the whistleblower protections set forth in the Sarbanes-Oxley Act, 15 U.S.C. § 1514A, and the Dodd-Frank Act, 15 U.S.C. § 78u-6.  (Doc. No. 1.)  On January 31, 2017, Defendants filed a premotion letter seeking leave to file the present motions to compel arbitration and to dismiss the complaint.  (Doc. No. 14.)  Plaintiff responded to the letter the following day (Doc. No. 16), and the Court held a premotion conference on February 10, at which the parties discussed the issues of exhaustion, timeliness, and arbitrability (*see* Hr'g Tr. 3:14–17, 7:11–11:9).   On March 3, 2017, Defendants filed the present motions, to which Plaintiff filed an opposition and Defendants filed a further reply brief in support.  (Doc. Nos. 20, 23, 29.)  On March 24, 2017 – the same day Plaintiff filed her opposition – she also filed an amended complaint along with a letter motion seeking leave to file the amended complaint.  (Doc. Nos. 24, 25.)  As discussed above, because Plaintiff filed her amended complaint within twenty-one days of Defendants' motion, she had the right to amend her pleading without permission from the Court.  Consequently, the amended complaint is the operative pleading here.  (*See supra* n.1.)  With leave of the Court, Defendants filed a letter supplementing their motion to dismiss on October 6, 2017, and Plaintiff

---

[2] FINRA maintains a database where members can search for information concerning specific financial professionals. Financial firms submit and maintain U5 Forms to document a financial professional's period of employment, employment performance, and other details for the benefit of future employers, regulators, and interested parties.  (*See* FAC ¶¶ 28, 30.)

[3] Specifically, Plaintiff asserts violations of Title VII, the Equal Pay Act ("EPA"), the New York State Human Rights Law, New York State's workplace retaliation statute, and the New York City Human Rights Law.

responded on October 20, 2017.  (Doc. Nos. 34, 37.)  On October 2, 2017, Plaintiff filed a letter stating that she had exhausted her complaint in administrative proceedings and seeking leave to file a "motion to remove her Sarbanes-Oxley claim [to federal court] for de novo review."  (Doc. No. 32.)  The Court denied this request, concluding that such motion was unnecessary and duplicative.  (Doc. No. 33.)  Despite this order, however, Plaintiff did file such a "removal" motion, to which Defendants submitted a response.  (Doc. Nos. 35, 36, 38, 39.)  Because Plaintiff's "motion to remove" was filed in contravention of a Court order, the Court will neither consider it nor Defendants' response, and that motion is denied.

As for the remaining motions, Defendants argue, first, that the vast majority of Plaintiff's claims are subject to mandatory arbitration per her employment agreement with Defendants. Second, Defendants argue that Plaintiff's sole non-arbitrable claim, the alleged violation of Sarbanes-Oxley's whistleblower protections, must be dismissed.  The Court will address each in turn.

## II.  MOTION TO COMPEL ARBITRATION

Under the Federal Arbitration Act, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  "A district court has no discretion regarding the arbitrability of a dispute when the parties have agreed in writing to arbitration."  *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 25 (2d Cir. 1995) (citing 9 U.S.C. §§ 3, 4).  Federal policy favors arbitration "as an alternative means of dispute resolution."  *Hartford Accident & Indemnity Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001).  Indeed, the Second Circuit has stated that "it is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy we 'have often and emphatically applied.'"  *Arciniaga v. Gen. Motors Corp.*, 460 F.3d 231, 234 (2d Cir. 2006) (quoting *Leadertex*, 67 F.3d at 25).  Accordingly, "where . . . the existence of an

4

arbitration agreement is undisputed, doubts as to whether a claim falls within the scope of that agreement should be resolved in favor of arbitrability." *ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co.*, 307 F.3d 24, 29 (2d Cir. 2002); *see also Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 19 (2d Cir. 1995) ("'[F]ederal policy requires us to construe arbitration clauses as broadly as possible.' . . . We will compel arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" (quoting *David L. Threlkeld & Co. v. Metallgesellschaft Ltd. (London)*, 923 F.2d 245, 250 (2d Cir. 1991))). "In the context of motions to compel arbitration . . . the court applies a standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003).

To determine whether a dispute is arbitrable, a court must decide two questions: "(1) whether there exists a valid agreement to arbitrate at all under the contract in question . . . and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement." *Hartford Accident*, 246 F. 3d at 226 (citation omitted). In addition, where federal statutory claims are asserted, a court must also consider a third issue – that is, "whether Congress intended those claims to be nonarbitrable." *Guyden v. Aetna, Inc.*, 544 F.3d 376, 382 (2d Cir. 2008) (quoting *Oldroyd v. Elmira Sav. Bank*, 134 F.3d 72, 75–76 (2d Cir. 1998)). "[S]tatutory claims may be the subject of an arbitration agreement, enforceable pursuant to the [Federal Arbitration Act] . . . 'unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.'" *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)).

Here, Plaintiff entered into an agreement with Defendants making arbitration the required and exclusive forum for the resolution of all employment-related disputes.[4]  (*See* Doc. No. 22, Ex. 5 (the "Arbitration Agreement").)  In relevant part, the language of the Agreement provides:

> This Policy applies to both you and to Citi, and makes arbitration the required and exclusive forum for the resolution of all employment-related disputes (other than disputes which by statute are not subject to arbitration) which are based on legally protected rights (i.e., statutory, regulatory, contractual, or common-law rights) and arise between you and Citi, its predecessors, successors and assigns, its current and former parents, subsidiaries, and affiliates . . . .  These disputes include, without limitation, claims, demands, or actions under Title VII of the Civil Rights Act of 1964, . . .  the Equal Pay Act of 1963, . . . and any other federal, state, or local statute, regulation, or common-law doctrine regarding employment, employment discrimination, the terms and conditions of employment, termination of employment, compensation, breach of contract, defamation, or retaliation, whistle-blowing, or any claims arising under the Citigroup Separation Pay Plan.

(Doc. No. 22, Ex. 5 at 3.)  Plaintiff does not deny the existence or the validity of the Agreement. And it is also clear that all of Plaintiff's claims in this lawsuit are undeniably employment-related. Accordingly, Plaintiff's state law claims must be arbitrated.  *See Preston v. Ferrer*, 552 U.S. 346, 352–53 (2008).  The only sticking point in the analysis is whether there is any discernable congressional intent to make Plaintiff's federal statutory claims –Title VII, the EPA, Sarbanes-Oxley, and Dodd-Frank – non-arbitrable.

The Second Circuit has expressly held that Title VII claims are arbitrable.  *See Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.,* 191 F.3d 198, 206 (2d Cir. 1999); *see also, e.g.*, *Johnson v. Tishman Speyer Props., L.P.*, No. 09-cv-1959 (WHP), 2009 WL 3364038, at *3 (S.D.N.Y. Oct. 16, 2009) (compelling arbitration for Title VII claims specifically named in the arbitration agreement).  Here, the Arbitration Agreement states that the scope of the agreement "includes,

---

[4] Plaintiff actually entered into three successive, substantially identical, arbitration agreements with Defendants.  (*See* Doc. No. 22, Exs. 1, 3, 5.)  Each agreement was included as an appendix to the employee handbook, and Plaintiff submitted electronic acknowledgements that she accepted the terms of each agreement.  (*See id.*, Exs. 2, 4, 6.)

without limitation, claims, demands, or actions under Title VII of the Civil Rights Act of 1964."
(Doc. No. 22, Ex. 5 at 3.)  Accordingly, Plaintiff's Title VII claim is subject to arbitration.

As for Plaintiff's EPA claim, Plaintiff neither contests the arbitrability of that claim, nor
carries her burden in demonstrating that Congress "intended to preclude a waiver of a judicial
forum" with respect to EPA claims.  *Gilmer*, 500 U.S. at 26.  In the absence of any discernable
congressional intent to the contrary, the Court finds that Plaintiff's EPA claim is obviously subject
to arbitration.  *Accord Steele v. L.F. Rothschild & Co., Inc.*, 701 F. Supp. 407, 408 (S.D.N.Y. 1988)
(concluding that EPA claims are arbitrable).

Plaintiff's Sarbanes-Oxley whistleblower anti-retaliation claim stands on different footing.
When Congress enacted Dodd-Frank, it amended Sarbanes-Oxley's whistleblower anti-retaliation
provision to make it non-arbitrable.  *See* 18 U.S.C. § 1514A(e)(2) ("No predispute arbitration
agreement shall be valid or enforceable, if the agreement requires arbitration of a dispute arising
under this section.").  This constitutes a clear congressional statement of intent that Sarbanes-
Oxley whistleblower claims be exempted from arbitration.  Accordingly, this claim is not
arbitrable.

A closer question is whether Dodd-Frank's separate whistleblower anti-retaliation
provision is non-arbitrable.  As discussed above, when Congress enacted Dodd-Frank it amended
Sarbanes-Oxley's whistleblower provision to exempt such claims from predispute arbitration
agreements; however, Congress did not include the same language in Dodd-Frank's own
analogous whistleblower-protection provision.  *Compare* 18 U.S.C. § 1514A(e)(2) (Sarbanes-
Oxley), *with* 15 U.S.C. § 78u-6(h)(1) (Dodd-Frank).  At first glance, it might appear odd that a
single piece of legislation – Dodd-Frank – would simultaneously amend an earlier-enacted
whistleblower provision to limit its arbitrability while enacting a new whistleblower protection

with no restrictions as to arbitrability.  But on closer inspection, and as Judge Failla noted in a thoughtful opinion on the subject, it is apparent that the two whistleblower provisions are distinct, differing in procedure, remedies, and their statutes of limitations such that the conditions of one cannot simply be grafted upon the other.  *See Murray v. UBS Sec., LLC*, No. 12-cv-5914 (KPF), 2014 WL 285093, at *8–9 (S.D.N.Y. Jan. 27, 2014); *see also Ahmad v. Morgan Stanley & Co., Inc.*, 2 F. Supp. 3d 491, 497 (S.D.N.Y. 2014) (concluding that Dodd-Frank is not "merely a fraternal twin of the Sarbanes–Oxley whistleblower provision, . . . . it is a distinct cause of action that 'increases a party's liability for past conduct'" (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994))).  Needless to say, "when Congress amends one statutory provision but not another, it is presumed to have acted intentionally."  *Gross v. FBL Fin. Servs.,* Inc., 557 U.S. 167, 174–75 (2009).  The Court thus finds that Congress's choice not to include a mirror provision in the anti-retaliation provisions of Dodd-Frank is suggestive of its intent that the Dodd-Frank claim be subject to arbitration.  In light of this ascertainable congressional intent, the Court concludes, like Judge Failla, that Dodd-Frank's whistleblower provision is not subject to the bar on arbitrability imposed by Sarbanes-Oxley's similar provision.  *See Murray*, 2014 WL 285093, at *11.  Accordingly, all of Plaintiff's claims, with the exception of her Sarbanes-Oxley claim, are arbitrable.

### III.  MOTION TO DISMISS

Defendants seek to dismiss Plaintiff's Sarbanes-Oxley claim for lack of jurisdiction due to Plaintiff's failure to properly exhaust her claim.  Most courts to consider the question have concluded that failure to properly comply with the statute's administrative exhaustion regime divests district courts of jurisdiction.  *See, e.g., Feldman v. Law Enf't Assocs. Corp.*, 752 F.3d 339, 345–346 (4th Cir. 2014) (assuming, without deciding, "that the requirement to exhaust one's administrative remedies . . . is jurisdictional"); *Wong v. CKX, Inc.*, 890 F. Supp. 2d 411, 417

(S.D.N.Y. 2012); *Mart v. Forest River, Inc.*, 854 F. Supp. 2d 577, 588–89 (N.D. Ind. 2012) (compiling cases). But whether Plaintiff's failure to exhaust is jurisdictional or goes to an element of her claim, the Court has little difficulty concluding that Plaintiff's Sarbanes-Oxley claim must be dismissed.

On a Rule 12(b)(1) motion to dismiss, the party seeking to invoke the Court's jurisdiction bears the burden of proving that subject matter jurisdiction exists. *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must "provide the grounds upon which [the] claim rests." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."). To meet this standard, plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a Rule 12(b)(6) motion to dismiss, a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *ATSI Commc'ns*, 493 F.3d at 98. However, that tenet "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Thus, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."

*Twombly*, 550 U.S. at 555.  If the plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed."  *Id.* at 570.

Sarbanes-Oxley's whistleblower provision "prohibits a publicly traded company from retaliating against an employee who provides information concerning securities law violations to, among other[s], a federal regulatory or law enforcement agency, a member of Congress, or 'a person with supervisory authority over the employee.'"  *Berman v. Neo@Ogilvy LLC,* 801 F. 3d 145, 147 (2d Cir. 2015) (citing 18 U.S.C. § 1514A(a)(1)).  Nevertheless, Sarbanes-Oxley and its implementing regulations establish requirements for administrative exhaustion.  Thus, an employee seeking relief under the whistleblower provisions of Sarbanes-Oxley must first file a complaint with the Occupational Safety and Health Administration ("OSHA").  *See* 18 U.S.C. § 1514A(b)(1)(A); 29 C.F.R. § 1980.103(d).  This filing "shall be commenced not later than 180 days after the date on which the violation occurs, or after the date on which the employee became aware of the violation."  18 U.S.C. § 1514A(b)(2)(D).  If the Secretary of Labor has not issued a final decision within 180 days of the complaint's filing, the employee may bring "an action at law or equity for de novo review in the appropriate district court of the United States."  18 U.S.C. § 1514A(b)(1)(B); 29 C.F.R. § 1980.114.  Because Section 1514A provides that "OSHA has exclusive jurisdiction over Sarbanes-Oxley whistleblower claims for 180 days," a "federal court may not hear a Sarbanes–Oxley claim that is not first submitted to OSHA."  *Wong*, 890 F. Supp. 2d at 417.

Here, the parties agree that 180 days have elapsed since Plaintiff filed her administrative complaint with OSHA.[5]  (*See* FAC ¶ 49, Doc. Nos. 34, 37.)  However, even if the claim has been

---

[5] The amended complaint alleges that Plaintiff filed a complaint "with the Department of Labor . . . alleging whistleblower retaliation in violation of Sarbanes Oxley" on November 28, 2016.  (FAC ¶ 49.)  However, in subsequent submissions, Defendants claim – and Plaintiff concedes – that OSHA did not receive the complaint until

pending for more than 180 days, it was not timely filed and thus was not properly exhausted, since Plaintiff was fired in December 2014, but did not file her complaint for retaliation for two years, well after the 180-day filing window that followed the alleged retaliation.

Plaintiff responds that because she continues to experience harm as a result of Defendants' filing of a negative U5 – which is accessible to potential employers via the FINRA database – she is suffering from a continuing violation for which the 180-day limit has not yet run. But while the continuing violation doctrine may function in narrow circumstances to allow courts to consider a mix of timely and time-barred conduct as part of one violative pattern of activity, *see Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015), that doctrine does not apply to the discrete acts at issue in retaliation cases – in this case, Plaintiff's alleged exclusion from certain meetings, ultimate termination, and the filing of a retaliatory U5. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114–15 (2002); *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir. 1997) ("Discrete incidents of discrimination that are unrelated to an identifiable policy or practice . . . 'will not ordinarily amount to a continuing violation' . . . ." (quoting *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 713 (2d Cir. 1996)). Indeed, the Fifth Circuit confronted a strikingly similar fact pattern and concluded that the "'continuing violation' theory has no application to th[e] discrete act" of the filing of an allegedly retaliatory U5 form. *Judy Chou Chiung-Yu Wang v. Prudential Ins. Co. of Am.*, 439 F. App'x 359, 366 & n.6 (5th Cir. 2011). Plaintiff's corollary argument – that she continues to suffer ongoing consequences of the allegedly false and retaliatory U5 – is equally unavailing. *See Lightfoot*, 110 F. 3d at 907–08 ("A continuing violation is not established merely because an employee continues to feel the effects of a discriminatory act on the part of the employer. To hold otherwise would render meaningless the time limitations imposed

March 24, 2017. (*See* Doc. No. 34 at 2, Doc. No. 37 at 3.) Because either date is well beyond the 180-day limit prescribed by statute, the Court need not resolve this factual discrepancy.

on discrimination actions."); *see also Birch v. City of New York*, 675 F. App'x 43, 44 & n.1 (2d Cir. 2017) (same).

In sum, Plaintiff's Sarbanes-Oxley claim was not properly exhausted under Section 1514A(b)(2)(D). Accordingly, if the exhaustion requirement is jurisdictional, Plaintiff's Sarbanes-Oxley claim fails for lack of subject-matter jurisdiction; if proper exhaustion is simply an element of the claim, Plaintiff fails to state a claim. Either way, Defendants' motion to dismiss must be granted.

IV. NEXT STEPS

Because all of Plaintiff's remaining claims are arbitrable and subject to a valid arbitration agreement, they must be arbitrated. By submitting her claims to arbitration, Plaintiff "does not forgo the substantive rights afforded by the statute" but "only submits to their resolution in an arbitral, rather than a judicial, forum." *Mitsubishi Motors Corp.*, 473 U.S. at 628. Where an entire dispute is arbitrable, the Federal Arbitration Act "requires a stay of proceedings when all claims are referred to arbitration *and a stay requested*." *Katz v. Cellco P'ship*, 794 F.3d 341, 343 (2d Cir. 2015) (emphasis added); *see also* 9 U.S.C. § 3. But where "[d]efendants seek dismissal rather than a stay . . . th[e] Court has discretion whether to stay or dismiss Plaintiffs' action." *Zambrano v. Strategic Delivery Sols., LLC*, No. 15-cv-8410 (ER), 2016 WL 5339552, at *10 (S.D.N.Y. Sept. 22, 2016). Here, neither party has requested a stay. Accordingly, out of an abundance of caution, if either party wishes for this case to be stayed pending arbitration, that party must inform the Court of that fact no later than February 13, 2018.

V. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED THAT Plaintiff's Sarbanes-Oxley claim is DISMISSED and that Defendants' motion to compel arbitration is GRANTED.  IT IS FURTHER ORDERED THAT if either party wishes for this action to be stayed rather than dismissed, that party shall inform the Court no later than February 13, 2018.  The Clerk of the Court is respectfully directed to terminate the motions located at document number 20 and 38.

SO ORDERED.

Dated:      February 6, 2018
            New York, New York


                                        RICHARD J. SULLIVAN
                                        UNITED STATES DISTRICT JUDGE

13