18-665
*Daly v. Citigroup Inc., et al.*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2018

(Argued: March 29, 2019    Decided: September 19, 2019)

Docket No. 18-665

────────────────────

ERIN DALY
*Plaintiff-Appellant,*

v.

CITIGROUP INC., CITIGROUP GLOBAL MARKETS INC., CITIBANK, N.A.,
*Defendants-Appellees.*

────────────────────

Before:    SACK, HALL, AND DRONEY, *Circuit Judges.*

The plaintiff-appellant, Erin Daly, is a former employee of Citigroup Inc.,

Citigroup Global Markets, Inc., and Citibank, N.A., the defendants-appellees.

She brought suit against them in the United States District Court for the Southern

District of New York alleging gender discrimination and whistleblower

retaliation claims under several local, state, and federal statutes, including the

Dodd-Frank and Sarbanes-Oxley Acts.  In response, the defendants filed a

motion to compel arbitration and to dismiss the plaintiff's claims, arguing that

each of the plaintiff's claims, with the exception of her Sarbanes-Oxley claim, was

subject to mandatory arbitration under her employment arbitration agreement,

and that her Sarbanes-Oxley claim should be dismissed for lack of subject matter

jurisdiction.  The district court (Richard J. Sullivan, *Judge*) issued an opinion and

order granting the defendants' motion in its entirety.  On appeal, the plaintiff

argues that the district court erred in dismissing her Sarbanes-Oxley claim and

compelling arbitration of the remainder of her claims.  We disagree.  The district

court appropriately compelled arbitration of all but the plaintiff's Sarbanes-Oxley

claim, including her Dodd-Frank whistleblower retaliation claim, because her

claims fall within the scope of her employment arbitration agreement and

because she failed to establish that they are precluded by law from arbitration.

The plaintiff's Sarbanes-Oxley claim was also properly dismissed because the

district court lacked subject matter jurisdiction over it inasmuch as the plaintiff

failed to exhaust her administrative remedies under the statute.  Accordingly, the

district court's order is:

     AFFIRMED.

MICHELLE N. DALY, Hopewell Junction, NY, *for Plaintiff-Appellant.*

LISA B. LUPION (Michael Delikat, *on the brief*), Orrick, Herrington, & Sutcliffe LLP, New York, NY, *for Defendants-Appellees.*

SACK, *Circuit Judge*:

The plaintiff-appellant Erin Daly was employed by the defendants-appellees, Citigroup Inc., Citigroup Global Markets, Inc., and Citibank, N.A. She brought suit in the United States District Court for the Southern District of New York alleging gender discrimination and whistleblower retaliation claims under several local, state, and federal laws, including the Dodd-Frank Act and the Sarbanes-Oxley Act. In response, the defendants filed a motion to compel arbitration and to dismiss the plaintiff's claims. They argued that all of the plaintiff's claims, with the exception of her Sarbanes-Oxley claim, were subject to mandatory arbitration under her employment arbitration agreement. The defendants further contended that the plaintiff's Sarbanes-Oxley claim, which is nonarbitrable by statute, required dismissal for lack of subject matter jurisdiction because the plaintiff had failed to exhaust her administrative remedies.

The district court (Richard J. Sullivan, *Judge*) issued an opinion and order granting the defendants' motion to compel arbitration and to dismiss in its entirety. The court concluded that the plaintiff's claims fell within the scope of

3

her employment arbitration agreement. It further concluded that the plaintiff had failed to establish that her claims were precluded by law from arbitration, with the exception of her Sarbanes-Oxley claim, which is nonarbitrable by statute. As relevant here, the court decided that because Congress had not demonstrated its intent to preclude claims arising under Dodd-Frank's whistleblower retaliation provision from arbitration, the plaintiff's Dodd-Frank whistleblower claim was arbitrable.

The court further concluded that the plaintiff's Sarbanes-Oxley claim should be dismissed because she had failed to exhaust her administrative remedies before filing her claim in federal court. While the district court noted its uncertainty as to whether failure to exhaust under Sarbanes-Oxley is a jurisdictional prerequisite to suit evaluated under Federal Rule of Civil Procedure 12(b)(1), or a claim-processing requirement to be assessed under Rule 12(b)(6), it concluded that the defendants' motion must in either event be granted. The district court therefore dismissed the plaintiff's Sarbanes-Oxley claim and ordered arbitration of the remainder of her claims.

On appeal, the plaintiff maintains that the district court erred in compelling arbitration of the majority of her claims because they involve the

same whistleblower activity that is the subject of her nonarbitrable Sarbanes-Oxley claim. She also argues that the district court erred in dismissing her Sarbanes-Oxley claim because even if administrative exhaustion is a jurisdictional prerequisite to suit, she has satisfied the statute's requirements.

These arguments are meritless. The district court correctly compelled arbitration of the plaintiff's claims, with the exception of her Sarbanes-Oxley claim, because they fall within the scope of her employment arbitration agreement and because she failed to satisfy her burden of establishing that such claims are precluded by statute from compelled arbitration. The plaintiff's Sarbanes-Oxley claim was also properly dismissed because the district court lacked subject matter jurisdiction inasmuch as the plaintiff failed to exhaust her administrative remedies under the statute, which constitutes a jurisdictional bar to suit in federal court. The district court therefore properly dismissed the plaintiff's Sarbanes-Oxley claim and granted the defendants' motion to compel arbitration as to the remainder of her claims.

# BACKGROUND

*Factual Background*

From 2007 through 2014, the plaintiff-appellant Erin Daly was employed by the defendants-appellees, Citigroup Inc., Citigroup Global Markets, Inc., and Citibank, N.A. (collectively the "defendants" or "Citi").  On three separate occasions while she was so employed, she entered into an arbitration agreement with the defendants, in the form of an Employment Arbitration Policy (the "Policy").  The Policy required that all employment-related disputes be arbitrated.[1]

In 2010, Daly was promoted to Assistant Vice President of the Citi Private Bank Division.  The position carried with it the highly coveted authority to allocate shares of stock for purchase among the defendants' customers.[2]  Amended Complaint ("AC") ¶ 72; J. App. 103.  On June 29, 2012, however, Daly was stripped of her authority to make such allocations.  Despite her complaints to her supervisors, Citi did not restore her privileges.  Other professional

---

[1] These agreements were included in an appendix to Citi's employee handbook, and the plaintiff electronically accepted each of their terms.

[2] In her complaint, Daly describes the securities vaguely as "subjective stock," AC ¶ 70, J. App. 103, and "stock of certain 'hot' IPOs," *id.* ¶ 72, J. App. 103, without alleging what her or the defendants' role was in its underwriting, sale, or distribution.

responsibilities of hers were also diminished. The plaintiff asserts that these

actions on the part of her superiors were intended to make it clear that "[t]he

boys were in charge." *Id*. ¶ 93; J. App. 106 (emphasis omitted).

The plaintiff further alleges that her supervisor, James Messina,

"constantly demanded that [she] disclose material non-public information of

which he knew she was in possession" so that "he could pass the information

along to his favored clients." *Id.* ¶¶ 121-22; J. App. 110. On November 19, 2014,

Daly conveyed those accusations to Citi attorneys and human resources

employees.

On December 1, 2014, less than two weeks later, Daly was notified that she

was being terminated. The defendants later filed a Uniform Termination Notice

for Securities Industry Registration Form ("Form U-5") with the Financial

Industry Regulatory Authority ("FINRA"), as required when a registered

representative of a firm departs therefrom for any reason.[3] It contained

---

[3] "The National Association of Securities Dealers ('NASD') require[d] its
members to file a termination form ('Form U-5') whenever they terminate[d] a
registered employee. The form contain[ed] the employer's statement of the
reasons for the termination, and the NASD provide[d] the form to any member
firm upon request." *Rosenberg v. MetLife, Inc.*, 493 F.3d 290, 290 (2d Cir. 2007) (*per
curiam*). In "2007, the NASD merged with parts of the New York Stock
[E]xchange to form FINRA and the NASD code was replaced by the FINRA
Code." *Metro. Life Ins. Co. v. Bucsek*, 919 F.3d 184, 188 (2d Cir. 2019). The Form

assertions that, among other things, the plaintiff had been late to work and had

mishandled confidential information.  The plaintiff asserts that these statements

are "false, malicious, and defamatory."  *Id.* ¶¶ 36-38; J. App. 17-18.  Because the

plaintiff's Form U-5 is available in the FINRA database, which allows FINRA

members to search for information about individual financial professionals, the

plaintiff alleges that the defendants' statements continue to have an adverse

impact on her employment opportunities.

*Procedural History*

On November 28, 2016, Daly filed a complaint in the United States District

Court for the Southern District of New York.  She alleged several gender

discrimination and whistleblower retaliation claims, including claims under Title

VII of the Civil Rights Act of 1964, 42 U.S.C. § 2002(e); the Equal Pay Act of 1963,

29 U.S.C. § 206(d); the Sarbanes-Oxley Act ("SOX"), 15 U.S.C. § 1514A; the Dodd-

---

U-5 filing requirement continued under FINRA.  *See* Financial Industry
Regulatory Authority, "Terminate an Individual's Registration,"
https://www.finra.org/industry/terminate-individuals-registration (last visited
September 3, 2019).

Frank Act ("Dodd-Frank"), 15 U.S.C. § 78u-6; and the Human Rights Laws of New York State and City.

On March 3, 2017, the defendants filed a motion to compel arbitration and to dismiss the plaintiff's claims. They argued that, with the exception of her SOX claim, the plaintiff's claims were employment-related and therefore subject to her employment arbitration agreement. They further contended that the plaintiff's SOX claim should be dismissed for lack of subject matter jurisdiction because she had failed to exhaust her administrative remedies.

On March 24, 2017, Daly responded, arguing that her claims were not subject to arbitration because there was clear congressional intent to preclude such claims from the waiver of judicial remedies. She also filed an amended complaint, the operative pleading in this case. On October 6, 2017, the defendants filed a letter supplementing their motion to dismiss, in light of the amended complaint, to which the plaintiff responded on October 20, 2017.

On February 6, 2018, the district court issued an opinion and order granting the defendants' motion in its entirety.[4] The district court found that the

---

[4] The opinion and order is equivalent to a final judgment against Daly from which she can and does appeal. *See* Fed. R. Civ. P. 54(a) (noting that "'Judgment' as used in these rules includes a decree and any order from which an appeal lies").

plaintiff had entered into three successive employment arbitration agreements. It concluded that the plaintiff's claims fell within the scope of her arbitration agreements. The court further determined that the plaintiff had failed to establish that her claims were nonetheless precluded from arbitration by law, with the exception of her SOX claim, which is nonarbitrable by statute. By contrast, because Congress had not demonstrated its intent to preclude Dodd-Frank whistleblower claims from arbitration, the plaintiff's Dodd-Frank claim was arbitrable. The court therefore concluded that each of the plaintiff's claims, with the exception of her SOX claim, was subject to mandatory arbitration.

The district court also dismissed the plaintiff's SOX whistleblower claim, concluding that the plaintiff had failed to file an administrative complaint within 180 days of the alleged violation, and, thus, had not exhausted her administrative remedies under the statute. *See* 18 U.S.C. § 1514A(b)(2)(D). The court noted its uncertainty as to whether failure to exhaust under SOX is a jurisdictional bar to suit, evaluated on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, or a claim-processing requirement to be assessed under Rule 12(b)(6) for failure to state a claim. But it determined that the plaintiff's claim was in either event dismissible: If exhaustion is

jurisdictional, the plaintiff's claim fails for lack of subject matter jurisdiction because she did not timely file her administrative complaint; and if it is an element of a claim, the plaintiff fails to assert equitable defenses that would excuse her belated filing. The court therefore dismissed the plaintiff's SOX claim and referred each of her other claims to arbitration.

## DISCUSSION

On appeal, the plaintiff argues that the district court erred in dismissing her SOX claim for lack of subject matter jurisdiction and compelling arbitration of her other claims. She insists that her Title VII, EPA, and Dodd-Frank claims involve the same whistleblower activity that is the subject of her nonarbitrable SOX claim and should therefore, like her SOX claim, be precluded from arbitration.[5] She further maintains that the district court erred in dismissing her SOX claim for failure to exhaust her administrative remedies because she continues to suffer an ongoing violation on the part of her former employer, thus rendering her administrative filing timely.

---

[5] On appeal, the plaintiff does not separately address her claims under the Equal Pay Act or Title VII. She does, however, speak generally about the claims asserted under federal law. *See, e.g.*, Pl. Br. 25 ("The claims asserted here are exactly the federal statutory claims . . . [which] . . . Congress intended . . . to be non arbitrable." (internal quotation marks omitted)). We therefore understand the plaintiff to be contesting the arbitrability of each of her federal claims, including those under the EPA and Title VII.

## I.      Motion to Compel Arbitration

We review a district court's decision to compel arbitration *de novo*.  *See Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 49 (2d Cir. 2004).

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, "reflects a legislative recognition of 'the desirability of arbitration as an alternative to the complications of litigation.'"  *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir. 1987) (quoting *Wilko v. Swan*, 346 U.S. 427, 431 (1953)).  The FAA, "reversing centuries of judicial hostility to arbitration agreements, was designed to allow parties to avoid the costliness and delays of litigation, and to place arbitration agreements upon the same footing as other contracts."  *Id.*(internal quotation marks omitted).  To achieve these goals, it provides that arbitration clauses in commercial contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  Therefore, "[b]y its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).

In reviewing a motion to compel arbitration, we must therefore determine:

(1) "whether the parties agreed to arbitrate"; (2) "the scope of that agreement";

and, (3) "if federal statutory claims are asserted, . . . whether Congress intended

those claims to be nonarbitrable." *Genesco*, 815 F.2d at 844. In accordance with

the "strong federal policy favoring arbitration as an alternative means of dispute

resolution," we resolve any doubts concerning the scope of arbitrable issues "in

favor of arbitrability." *State of N.Y. v. Oneida Indian Nation of N.Y.*, 90 F.3d 58, 61

(2d Cir. 1996). In so doing, we "will compel arbitration unless it may be said with

positive assurance that the arbitration clause is not susceptible of an

interpretation that covers the asserted dispute." *Id.* (internal quotation marks

omitted).

The plaintiff does not dispute that she entered into three valid arbitration

agreements with the defendants during the course of her employment, in the

form of an Employment Arbitration Policy. They provide:

> This Policy applies to both you and to Citi, and makes
> arbitration the required and exclusive forum for the
> resolution of all employment-related disputes (other
> than disputes which by statute are not subject to
> arbitration) which are based on legally protected rights
> (i.e., statutory, regulatory, contractual, or common-law
> rights) and arise between you and Citi . . . . These
> disputes include, without limitation, claims, demands, or

> actions under Title VII of the Civil Rights Act of 1964, . . .
> the Equal Pay Act of 1963, . . . and any other federal,
> state, or local statute, regulation, or common-law
> doctrine regarding employment, employment
> discrimination, the terms and conditions of employment,
> termination of employment, compensation, breach of
> contract, defamation, or retaliation, whistle-blowing, or
> any claims arising under the Citigroup Separation Pay
> Plan.

J. App. 75.  The plain terms of the plaintiff's arbitration agreements thus

establish that the parties agreed to arbitrate "all employment-related disputes."

*Id.*  And, as the district court correctly concluded, each of the plaintiff's claims fall

within that broad category.  The only question that remains then is whether

Congress intended for any of the plaintiff's federal statutory claims to be

nonarbitrable as a matter of law.

We conclude that the plaintiff's claims arising under Title VII and the

Equal Pay Act ("EPA") are arbitrable.  We have previously decided that there is

insufficient evidence "that with respect to claims under Title VII, Congress

intended to preclude the waiver of judicial remedies."  *Desiderio v. Nat'l Ass'n of*

*Sec. Dealers, Inc.*, 191 F.3d 198, 206 (2d Cir. 1999); *see also Gold v. Deutsche*

*Aktiengesellschaft*, 365 F.3d 144, 148 (2d Cir. 2004) (noting that we have

"conclude[d], along with the majority of other circuits, that Title VII claims could

be subject to compulsory arbitration").  Similarly, the plaintiff has failed to

present any "evidence that Congress intended claims arising under the EPA to be nonarbitrable." *Crawley v. Macy's Retail Holdings, Inc.*, No. 15 Civ. 2228 (KPF), 2017 WL 2297018, at *5, 2017 U.S. Dist. LEXIS 80541, at *13 (S.D.N.Y. May 25, 2017) (internal quotation marks omitted).  The plaintiff has therefore failed to meet her burden of showing with respect to either her Title VII or EPA claim that Congress intended to preclude her claims from arbitration.  *See Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 78 (2d Cir. 1998) ("Congress . . . may override the presumption in favor of arbitration by manifesting its intention to do so[, which] will be discoverable in the text of the [statute], its legislative history, or an inherent conflict between arbitration and the [statute's] underlying purposes." (internal quotation marks omitted)), *abrogated on other grounds by Katz v. Cellco P'ship*, 794 F.3d 341 (2d Cir. 2015).  The parties also expressly agreed that the scope of their arbitration agreements covers "claims . . . under Title VII . . . [and] . . . the Equal Pay Act of 1963."  J. App. 75.  The district court therefore correctly compelled arbitration of both claims.

Whether the plaintiff's Dodd-Frank claim is arbitrable, however, is less certain.  To determine whether it is, we must first look to its statutory framework.

15

In 2002, Congress passed the Sarbanes-Oxley Act, Pub. L. No. 107-204, 116 Stat. 745 (2002), which established a private right of action for employees of certain companies who are discharged for, among other things, "provid[ing] information . . . regarding any conduct which the employee reasonably believes constitutes a violation of [specified securities laws] . . . to . . . a person with supervisory authority over the employee." 18 U.S.C. § 1514A(a)(1)(C). Following the financial crisis of 2007-08, Congress passed the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, Pub. L. No. 111-203, 124 Stat. 1376 (2010), which, *inter alia*, amended a variety of federal statutory provisions that had been designed to regulate the financial industry. As relevant here, Dodd-Frank amended the Securities Exchange Act of 1934 to create a private right of action against an employer who retaliates against a whistleblower for engaging in one or more of three categories of protected activity including "making disclosures that are required or protected under [SOX]." 15 U.S.C. § 78u-6(h)(1)(A)(iii). Separately, Dodd-Frank amended the SOX whistleblower retaliation provision, 18 U.S.C. § 1514A, to include an anti-arbitration provision, which reads:

> (1) Waiver of rights and remedies.--The rights and remedies provided for in this section may not be waived

> by any agreement, policy form, or condition of
> employment, including by a predispute arbitration
> agreement.
>
> (2) Predispute arbitration agreements.--No predispute
> arbitration agreement shall be valid or enforceable, if the
> agreement requires arbitration of a dispute arising under
> this section.

18 U.S.C. § 1514A(e)(1)-(2). Importantly for present purposes, Dodd-Frank did

not include a comparable anti-arbitration provision in its own whistleblower

provision, § 78u-6(h).

The parties agree that Congress's amendment to SOX's

whistleblower-retaliation provision to include an anti-arbitration clause

evidences clear congressional intent that claims arising under that provision are

to be precluded from arbitration. We have yet to determine, however, whether

claims arising under Dodd-Frank's whistleblower provision are also precluded

from arbitration.[6] The Third Circuit, the only federal circuit to have ruled on this

---

[6] District courts in this Circuit have diverged on the issue. *Compare Murray v. UBS Securities, LLC*, No. 12 Civ. 5914 (KPF), 2014 WL 285093, at *8-11, 2014 U.S. Dist. LEXIS 9696, at *22-33 (S.D.N.Y Jan. 27, 2014) (Dodd-Frank claims are arbitrable), *with Wiggins v. ING U.S., Inc.*, No. 14 Civ. 1089 (JCH), 2015 WL 3771646, at *7, 2015 U.S. Dist. LEXIS 78129, at *19 (D. Conn. June 17, 2015) (Dodd-Frank claims are nonarbitrable).

issue, has found such claims to be arbitrable.[7] *See Khazin v. TD Ameritrade Holding Corp.*, 773 F.3d 488, 492-95 (3rd Cir. 2014). For the reasons that follow, we now join the Third Circuit in concluding that Congress did not intend to preclude arbitration of Dodd-Frank whistleblower claims:

First, nothing in Dodd-Frank's text suggests that claims arising thereunder are nonarbitrable. Dodd-Frank amended several statutory provisions to include anti-arbitration provisions but did not do so with respect to its own whistleblower provision, § 78u-6(h). As discussed above, Dodd-Frank amended SOX's whistleblower provision to include an anti-arbitration provision. *See* 18 U.S.C. § 1514A(e)(2). It also inserted an identical anti-arbitration provision into the whistleblower protections of the Commodity Exchange Act, *see* 7 U.S.C. § 26(n)(2), and a nearly identical provision into the whistleblower protections of the Consumer Financial Protection Act, *see* 12 U.S.C. § 5567(d)(2) ("[subject to one limited exception,] no predispute arbitration agreement shall be valid or

---

[7] This also appears to be the consensus position of district courts outside this Circuit. *See, e.g.*, *Sayre v. JP Morgan Chase & Co.*, No. 17-cv-449 (JLS) (MDD), 2018 WL 1109032, at *6, 2018 U.S. Dist. LEXIS 30776, at *14-15 (S.D. Cal. Feb. 26, 2018); *Wussow v. Bruker Corp.*, No. 16-cv-444 (WMC), 2017 WL 2805016, at *6-7, 2017 U.S. Dist. LEXIS 99904, at *15-18 (W.D. Wis. June 28, 2017); *Ruhe v. Masimo Corp.*, No. SACV 11–00734 (CJC), 2011 WL 4442790, at *4-5, 2011 U.S. Dist. LEXIS 104811, at *11-14 (C.D. Cal. Sept. 16, 2011).

enforceable to the extent that it requires arbitration of a dispute arising under this section.").

Congress's failure to attach an anti-arbitration provision to the Dodd-Frank whistleblower provision, § 78u-6(h), while simultaneously amending similar statutory regimes to include the same, is a strong indication of its intent not to preclude Dodd-Frank whistleblower claims from arbitration.[8]  *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 174 (2009) ("When Congress amends one statutory provision but not another, it is presumed to have acted intentionally [in doing so]."); *see also Khazin*, 773 F.3d at 493 ("The fact that Congress did not append an anti-arbitration provision to the Dodd-Frank cause of action while contemporaneously adding such provisions elsewhere suggests . . . that the omission was deliberate.").

---

 [8] The statute's legislative history also supports our understanding that this omission was not accidental.  *See, e.g.*, *Ruhe*, 2011 WL 4442790, at *4, 2011 U.S. Dist. LEXIS 104811, at *13-14 (concluding based on review of relevant legislative history that omission of anti-arbitration provision in Dodd-Frank's whistleblower provision was not a "drafting error"); *Wussow*, 2017 WL 2805016, at *7, 2017 U.S. Dist. LEXIS 99904, at *17-18 (noting that "Congress's apparent inconsistent treatment with the whistleblower provisions under SOX and Dodd-Frank has been the subject of substantial discussion and a fair amount of criticism.  Yet Congress has done nothing to expressly expand the SOX [a]nti-[a]rbitration [p]rovision to Dodd-Frank whistleblower claims" (internal citations omitted)).

Second, the language of the SOX anti-arbitration provision restricts its applicability to its own statutory scheme. As discussed above, the SOX anti-arbitration provision states that "[n]o predispute arbitration agreement shall be valid or enforceable, if the agreement requires arbitration of a dispute arising under *this section*." 18 U.S.C. § 1514A(e)(2) (emphasis added). The "section" referred to is the SOX whistleblower provision. The SOX anti-arbitration provision thus applies only to agreements requiring arbitration of SOX whistleblower claims. The Dodd-Frank cause of action, by contrast, is not located in the same section, or even the same title, of the federal code. *See* 15 U.S.C. § 78u-6(h).[9] The language of the SOX anti-arbitration provision thus further reflects congressional intent to limit its terms to the claims arising under its particular statutory scheme.

---

[9] Nor could the phrase "this section" refer to the location of these two provisions in Dodd-Frank itself. While both the SOX anti-arbitration provision and the Dodd-Frank whistleblower provision appear in the same section of Dodd-Frank, "Sec. 922. Whistleblower Protection," *see* 124 Stat. 1376, 1841-49 (2010), the text of the statute clearly indicates that each provision is to be incorporated at other points in the federal code. *Compare* § 922(c)(2), 124 Stat. at 1848 (amending the whistleblower provision of SOX "by adding [that anti-arbitration provision] at the end"), *with* § 922(a), 124 Stat. at 1841 (Dodd-Frank whistleblower provision to be inserted into "[t]he Securities Exchange Act of 1934 (15 U.S.C. 78[a et seq.]))."

Moreover, even if the SOX anti-arbitration provision were ambiguous, we still could not infer that Congress intended to extend its application to Dodd Frank. Despite some surface similarities,[10] the whistleblower retaliation

---

[10] The SOX whistleblower provision, 18 U.S.C. § 1514A(a), states, in relevant part, as follows:

> No company [covered under relevant provisions of the Securities Exchange Act] . . . may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of any lawful act done by the employee—
>
> (1) to provide information . . . regarding any conduct which the employee reasonably believes constitutes a violation of . . . any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders . . . ; or
>
> (2) to file . . . or otherwise assist in a proceeding filed . . . relating to an alleged violation of . . . any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders.

The Dodd-Frank whistleblower provision, 15 U.S.C. § 78u-6(h)(1)(A), states, in relevant part, as follows:

> No employer may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against, a whistleblower in the terms and conditions of employment because of any lawful act done by the whistleblower—
>
> (i) in providing information to the [Securities and Exchange] Commission in accordance with this section;

provisions of Sarbanes-Oxley and Dodd-Frank diverge significantly in their

"prohibited conduct, statute of limitations, and remedies."  *Ahmad v. Morgan*

*Stanley & Co.*, 2 F. Supp. 3d 491, 497 (S.D.N.Y. 2014).  For example, a

whistleblower seeking to assert a claim under SOX must first file an

administrative complaint with the Secretary of Labor through the Occupational

Safety and Health Administration ("OSHA"), *see* 18 U.S.C. § 1514A(b)(1)(A), 29

C.F.R. § 1980.103(c), while that same whistleblower asserting a claim under the

Dodd-Frank whistleblower provision may bring suit directly in federal district

court, *see* 15 U.S.C. § 78u-6(h)(1)(B)(i).  And a whistleblower asserting a claim

under SOX may obtain "back pay, with interest," 18 U.S.C. § 1514A(c)(2)(B), while

under Dodd-Frank he or she is entitled to double that amount, 15 U.S.C. § 78u-

6(h)(1)(C)(ii).  These differences in the statutes' whistleblower provisions support

our conclusion that Congress did not intend for SOX's anti-arbitration provision

to extend to whistleblower claims arising under Dodd-Frank.

---

(ii) in initiating, testifying in, or assisting in any investigation
or judicial or administrative action of the Commission based
upon or related to such information; or

(iii) in making disclosures that are required or protected
under [SOX}, this chapter . . . , and any other law, rule, or
regulation subject to the jurisdiction of the Commission.

Notwithstanding the absence of evidence that Congress intended to preclude from arbitration the Title VII, EPA, and Dodd-Frank claims, the plaintiff asserts that we cannot separate these claims from her SOX claims for purposes of determining their arbitrability because they arise out of the same act of whistleblowing. Pl. Br. 23. She therefore argues that each of her federal claims, like her SOX claim, should be precluded from arbitration. We disagree. We cannot simply lump all of the plaintiff's claims together for purposes of determining their arbitrability, even if they pertain to the same conduct. We are instead charged with "examin[ing] with care the complaints seeking to invoke [our] jurisdiction in order to separate arbitrable from nonarbitrable claims." *KPMG LLP v. Cocchi*, 565 U.S. 18, 19 (2011) (per curiam). Here, for the reasons discussed, we conclude that Congress did not intend for claims arising under Dodd-Frank's whistleblower provision to be precluded from arbitration. The plaintiff's SOX whistleblower claim cannot save her otherwise arbitrable claims from their fate. The district court therefore correctly compelled arbitration of all of the plaintiff's claims, with the exception of her SOX claim, which it properly determined to be nonarbitrable.

## II.    Motion to Dismiss

"We review *de novo* a district court's grant of a motion to dismiss, including legal conclusions concerning the court's interpretation and application of a statute of limitations." *Castagna v. Luceno*, 744 F.3d 254, 256 (2d Cir. 2014) (internal quotation marks omitted).  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "The burden of proving jurisdiction is on the party asserting it." *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994).

The district court dismissed the plaintiff's SOX whistleblower claim on the ground that she failed to exhaust the statute's administrative exhaustion requirements, which require a claimant who wishes to raise a claim of whistleblower retaliation to first file a complaint with OSHA within 180 days of the date of the alleged violation, or when the claimant first became aware of it.[11]

---

[11] As of July 22, 2010, the statute allows 180 days for the filing of a complaint, rather than the previously mandated statutory period of 90-days. 18 U.S.C. § 1514A(b)(2)(D) (2010).  Since the plaintiff filed her claim with OSHA no earlier than 2016, the 180-day filing period applies to her claim.

The plaintiff in this case did not file her complaint with OSHA until at least two years after she became aware of the alleged violation.  The district court concluded that Daly's claim required dismissal because she had failed to exhaust her administrative remedies, even though it was not certain whether the proper vehicle for that dismissal was for lack of jurisdiction, under Rule 12(b)(1), or for failure to state a claim, under Rule 12(b)(6).

In evaluating whether the plaintiff's SOX claim was correctly dismissed by the district court, we first assess whether the statute's administrative exhaustion requirements are a jurisdictional prerequisite to suit.  We consider the Rule 12(b)(1) challenge first since "if [we] must dismiss the complaint for lack of subject matter jurisdiction, the [dendants'] defenses and objections become moot and do not need to be determined."  *Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990) (internal quotation marks omitted).

This Court has yet to address whether SOX's administrative exhaustion requirements are a jurisdictional prerequisite to suit, nor have we found clear guidance among our sister circuits.  The Fourth Circuit assumed without deciding that a claimant's failure to exhaust the statute's administrative remedies would deprive a district court of jurisdiction, citing as support several district

court cases and an administrative decision of the Department of Labor.  *See*

*Feldman v. Law Enf't Assocs. Corp.*, 752 F.3d 339, 345 n.7 (4th Cir. 2014).  And the

Fifth Circuit similarly implied that the SOX exhaustion requirements are a

jurisdictional prerequisite to suit.  *See Heaney v. Prudential Real Estate Affiliates*,

*Inc.*, 328 F. App'x 314, 314 n.1 (5th Cir. 2009) (per curiam) (noting that the court

was "satisfied that the plaintiff exhausted his administrative remedies under the

Sarbanes Oxley Act and thus that the district court had jurisdiction over the

matter").[12]  However, the First Circuit appears to have departed from this

position.  *See Newman v. Lehman Bros. Holdings Inc.*, 901 F.3d 19, 25 (1st Cir. 2018)

(dismissing the plaintiff's SOX whistleblower claim for failure to exhaust under

12(b)(6) after noting that "administrative exhaustion requirements in similar

statutes . . . are mandatory, though not jurisdictional, and akin to a statute of

limitations"(internal quotation marks omitted)).

---

[12] Most district courts to have considered the issue have similarly concluded that a claimant's satisfying the statute's administrative exhaustion requirements is a jurisdictional prerequisite to suit.  *See, e.g., Verble v. Morgan Stanley Smith Barney, LLC*, 148 F. Supp. 3d 644, 649-50 (E.D. Tenn. 2015) (collecting cases), *aff'd on other grounds*, 676 F. App'x 421 (6th Cir. 2017); *Mart v. Forest River, Inc.*, 854 F. Supp. 2d 577, 599 (N.D. Ind. 2012) (same); *Trusz v. UBS Realty Inv'rs*, No. 9 Civ. 268 (JBA), 2010 WL 1287148, at *4 n.2, 2010 U.S. Dist. LEXIS 30374, *11-13 n.2 (D. Conn. Mar. 30, 2010);  *Nieman v. Nationwide Mut. Ins. Co.*, 706 F. Supp. 2d 897, 907 (C.D. Ill. 2010); *JDS Uniphase Corp. v. Jennings*, 473 F. Supp. 2d 705, 710 (E.D. Va. 2007); *Willis v. Vie Fin. Grp., Inc.*, No. CIV.A. 04-435, 2004 WL 1774575, at *2 n.3, 2004 U.S. Dist. LEXIS 15753, *5 (E.D. Pa. Aug. 6, 2004).

To determine whether the administrative exhaustion requirements of SOX are jurisdictional or not, we look to the text of the statute to assess the congressional intent behind it.  *See Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 501 (1982) ("[T]he initial question whether exhaustion is required should be answered by reference to congressional intent."); *Ace Prop. & Cas. Ins. Co. v. Fed. Crop Ins. Corp.*, 440 F.3d 992, 996 (8th Cir. 2006) ("The Supreme Court has indicated that a statute requiring plaintiffs to exhaust administrative remedies before coming into federal court may be either jurisdictional in nature or non jurisdictional, depending on the intent of Congress as evinced by the language used."(citing *Weinberger v. Salfi*, 422 U.S. 749 (1975))).

We conclude that the text of SOX makes clear that Congress intended for its administrative exhaustion requirements to be a jurisdictional prerequisite to suit in federal court.  The statute's exhaustion requirements are included in the same provision—indeed, in the same sentence—as its jurisdictional provision. And that provision expressly grants federal jurisdiction only when specific administrative remedies have been exhausted:

> (1) In general.--A person who alleges discharge or other discrimination by any person in violation of [the whistleblower protection provision] may seek relief under [this section], by--

(A) filing a complaint with the Secretary of Labor; or

(B) if the Secretary has not issued a final decision within 180 days of the filing of the complaint and there is no showing that such delay is due to the bad faith of the claimant, bringing an action at law or equity for de novo review in the appropriate district court of the United States, which shall have jurisdiction over such an action without regard to the amount in controversy.

18 U.S.C. § 1514A(b)(1)(A)-(B).

The statute goes on to state that an employee asserting a SOX whistleblower claim must file her complaint with the Secretary of Labor "not later than 180 days after the date on which the violation occurs, or after the date on which the employee became aware of the violation." 18 U.S.C. § 1514A(b)(2)(D). And the Secretary of Labor has, in turn, delegated the responsibility for adjudicating such a claim to OSHA. *See* 29 C.F.R. § 1980.103(b)-(d).

By the terms of the statute and its attendant regulations, then, a party may seek review of a SOX whistleblower claim in federal court under two circumstances:

First, when OSHA fails to issue a final decision within 180 days of the filing of an administrative complaint, and "there is no showing that such delay is

due to the bad faith of the claimant," 18 U.S.C. § 1514A(b)(1)(B),[13] a party may

seek relief by "bringing an action at law or equity for de novo review in the

appropriate district court of the United States." *Id*. Second, review in federal

court is possible if the party seeks review of a final order from OSHA within 60

days in "the United States Court of Appeals for the circuit in which the violation

allegedly occurred or the circuit in which the complainant resided on the date of

the violation," in which case the federal court's review on appeal is limited to the

administrative record. *See Bechtel v. Admin. Review Bd., U.S. Dep't of Labor*, 710

F.3d 443, 450 (2d Cir. 2013) (explaining on review of agency order dismissing

SOX whistleblower claim that our review is limited to the administrative record).

In either instance, however, for the federal court to have jurisdiction over

the claim, the claimant must first commence an action with an adjudicating

administrative agency.[14] And the nature of a federal court's subsequent review,

---

[13] A final order in an OSHA administrative proceeding is issued by an Administrative Law Judge, unless a petition for review is filed and accepted by the Administrative Review Board, who would then issue the final order. *See* 29 C.F.R. §§ 1980.109-110.

[14] In this regard, the administrative scheme of SOX differs significantly from that of Title VII, which we have previously concluded does not create a jurisdictional prerequisite to suit. *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 384 (2d Cir. 2015). While SOX is "judicial in nature and is designed to resolve the controversy on its merits," the procedures of Title VII are "geared toward fostering settlement." *Roganti v. Metro. Life Ins. Co.*, No. 12 Civ. 161 (PAE), 2012 WL 2324476, at *6, 2012 U.S. Dist. LEXIS

if any, is expressly set forth by statute and agency regulation, including the

standard of review (*de novo*) and the substantive content that may be reviewed

(the administrative record).  This procedural structure reflects Congress's clear

intent for federal courts to exercise jurisdiction over a SOX claim only after the

claimant has first exhausted the statute's administrative remedies.  We therefore

conclude that the administrative exhaustion requirements under SOX are

jurisdictional and a prerequisite to suit in federal court.

We also conclude that the plaintiff has failed to exhaust her administrative

remedies, which, for the foregoing reasons, deprives federal courts of subject

matter jurisdiction over her claim.  Daly contends that she filed an administrative

complaint on November 28, 2016, which is approximately two years after her

alleged wrongful termination, although she concedes that OSHA did not actually

receive her complaint until March 24, 2017.  *See Daly v. Citigroup Inc.*, No. 16-cv-

9183 (RJS), 2018 WL 741414, at *6 n.5, 2018 U.S. Dist. LEXIS 19413, *15 n.5

---

84939, at *18 (S.D.N.Y. June 18, 2012) (quoting *Willis*, 2004 WL 1774575 at *5, 2004 U.S.
Dist. LEXIS 15753, at *15).  And while, as discussed, the federal jurisdictional provision
of SOX is coupled with its administrative exhaustion requirements, the jurisdictional
provision in Title VII, by contrast, is entirely separate from the "provision specifying the
time for filing charges with the EEOC" and "does not limit jurisdiction to those cases in
which there has been a timely filing."  *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385,
393-94 (1982).

(S.D.N.Y. Feb. 6, 2018).  In either event, though, her administrative complaint

was untimely:  It was submitted long after the 180-day statutory filing period

had run.  *See* 18 U.S.C. § 1514A(b)(2)(D); 29 C.F.R. § 1980.103(d).  Because the

plaintiff did not exhaust her administrative remedies, the district court correctly

dismissed her claim for lack of subject matter jurisdiction.

The plaintiff argues that even if filing a complaint with OSHA is a

jurisdictional prerequisite to suit, it is a requirement that she has satisfied under

the "continuing violation" doctrine.  *See* Pl. Br. 13-14, 18-20.  Under that doctrine,

a court may review a claim involving a mix of timely and time-barred conduct as

part of one violative pattern of activity.  *Gonzalez v.* Hasty, 802 F.3d 212, 220 (2d

Cir. 2015).  The plaintiff argues that because the defendants' filing of a false and

defamatory Form U-5 about her on the FINRA database continues to prevent her

from obtaining employment in the financial sector, their violation is ongoing

and, therefore, her 180-day filing deadline has not yet elapsed.  *See* Pl. Br. 13-14,

18-20.

We disagree.  The Supreme Court has rejected the continuing violation

doctrine in the employment discrimination context when the alleged violation

involves discrete acts, rather than an ongoing discriminatory policy.  *See Nat'l*

*R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114-15 (2002) (explaining that "acts

such as termination, failure to promote, denial of transfer, or refusal to hire" are

clearly discrete adverse actions); *see also Lightfoot v. Union Carbide Corp.*, 110 F.3d

898, 907 (2d Cir. 1997) ("Discrete incidents of discrimination . . . will not

ordinarily amount to a continuing violation, unless such incidents are specifically

related and are allowed to continue unremedied for so long as to amount to a

discriminatory policy or practice." (internal quotation marks omitted)).  The

defendants' misconduct, as alleged, consists of discrete, discriminatory acts,

including her exclusion from workplace meetings, ultimate termination, and the

filing of a disparaging Form U-5.  They do not amount to an overarching policy

of discrimination and are, therefore, insufficient to establish a continuing

violation for purposes of deferring her administrative filing deadline.  *See

Gonzalez*, 802 F.3d at 220 (explaining that the continuing violation doctrine does

not apply "to discrete unlawful acts, even where those discrete acts are part of a

serial violation" (internal quotation marks and brackets omitted)).  Indeed, "[t]o

hold otherwise would render meaningless the time limitations imposed on

discrimination actions." *Lightfoot*, 110 F.3d at 907-08.

We conclude, then, that Congress intended for federal courts to be able to assert jurisdiction over a SOX whistleblower claim only after the claimant has first exhausted the statute's administrative remedies.  Here, Daly failed to satisfy her administrative exhaustion requirements because she did not file a timely complaint with OSHA.  She is therefore precluded from filing her claim in federal district court.  Because the district court lacked subject matter jurisdiction over her claim, the court properly dismissed it under Rule 12(b)(1).[15]

## Conclusion

We have considered the plaintiff's remaining arguments on appeal and conclude that they are without merit.  For the foregoing reasons, we AFFIRM the order of the district court.

---

[15] Because we conclude that the plaintiff's failure to exhaust is a jurisdictional bar to suit, we need not reach the plaintiff's SOX claim on the merits.